UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EAST COAST PLASTIC
SURGERY, P.C. *and* NORMAN
MAURICE ROWE, M.D., M.H.A.,
P.C.,

                 Plaintiffs,

– *against* –

AETNA HEALTH AND LIFE
INSURANCE COMPANY,

                 Defendant.

**OPINION & ORDER**

25-cv-6136 (ER)

RAMOS, D.J.:

East Coast Plastic Surgery, P.C. ("ECPS") and Norman Maurice Rowe, M.D., M.H.A., P.C. (collectively, "Plaintiffs") filed this action against Aetna Life Insurance Company[1] ("Aetna") alleging violations of state contract and tort law.

Before the Court is Aetna's motion to dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the motion is GRANTED.

I. **BACKGROUND**

    A. **Factual Background**

The following facts are drawn from allegations contained in the amended complaint, Doc. 29, which the Court accepts as true for purposes of the instant motion. *Koch v. Christie's International, PLC*, 699 F.3d 141, 145 (2d Cir. 2012). The Court also considers the transcript of a telephone call between Plaintiffs' employee, Nikita,[2] and Aetna representative, Danielle O.,[3] submitted by Aetna because it is integral to and incorporated by reference in the amended complaint, as the representations made on the

---

[1] Plaintiffs incorrectly list Aetna Life Insurance Company in the caption as "Aetna Health and Life Insurance Company."

[2] Identified in the Call Transcript solely by her first name.

[3] Identified in the Call Transcript as "Danielle O."

call are the basis for this lawsuit. Doc. 34-2 ("Call Transcript"); *see also Rowe Plastic Surgery of New Jersey, L.L.C. v. Aetna Life Insurance Co.*, No. 23-8083, 2024 WL 4315128, at *2 (2d Cir. Sept. 27, 2024) (concluding that a materially similar call transcript was integral to the amended complaint).

Plaintiffs are professional corporations that practice plastic surgery. ¶¶ 1–2.[4] Their sole shareholder, Norman Rowe, M.D., is a domiciliary of New York. *Id.*

Aetna is an insurance company incorporated in Delaware and headquartered in Connecticut. ¶ 3.

On March 6, 2020, Nikita called Aetna ("March 2020 call") to verify insurance coverage and benefit information related to a bilateral breast reduction to be performed on Plaintiffs' patient, S.M.[5] ¶¶ 13–14; Call Transcript at 2–3. Nikita told Danielle O., "I have a [Current Procedural Terminology] code.[6] I'd like the benefit information for the patient, please." *Id.* at 3. Danielle O. and Nikita discussed S.M.'s in- and out-of-network coverage before Nikita asked, "For reimbursement, is it reasonable and customary Medicare rates, or FAIR Health?"[7] *Id.* at 8. Danielle O. replied, "That would be 80th percentile of reasonable and customary." *Id.* The two then briefly discussed other patients before the call ended. *Id.* at 9–14.

Based on this interaction, Plaintiffs allege that, "using industry standard terms and conditions, Aetna orally assured [Plaintiffs] that the price it would be pay[ing] for S.M.'s surgery by out-of-network providers would be equal to the 80th percentile of the

---

[4] Unless otherwise stated, citations to "¶ __" refer to paragraphs in the amended complaint, Doc. 29.

[5] Identified herein by her initials.

[6] Current Procedural Terminology ("CPT") codes are standardized codes promulgated by the American Medical Association that correspond to particular medical procedures and services. They are used in the healthcare field to, among other things, ensure accuracy and efficiency in billing, claims processing, and insurance reimbursement. *CPT Overview and Code Approval*, American Medical Association (June 27, 2025), https://www.ama-assn.org/practice-management/cpt/cpt-overview-and-code-approval.

[7] FAIR Health is a third-party pricing service that Aetna formerly used in calculating out-of-network services pricing pursuant to a settlement agreement with New York's Attorney General that expired in 2015. Aetna has since stopped using FAIR Health. ¶¶ 28–30.

reasonable and customary fee schedule." ¶ 14. In the months following the March 2020 call, Plaintiffs were repeatedly in contact with Aetna representatives regarding S.M.'s planned surgery, confirming information such as the facility where the surgery would take place, that the surgery had been authorized for coverage, and the specific surgeons who would perform the procedure. ¶¶ 19, 73–81. On July 15, 2020, Plaintiffs performed the procedure on S.M. ¶ 20. Plaintiffs allege that they relied on Aetna's representation regarding its rate of reimbursement in performing the surgery and forbearing from collecting payment in full from S.M. prior to the procedure. ¶¶ 66, 84. Using a fee schedule promulgated by FAIR Health, Plaintiffs calculated Aetna's obligation for the surgery performed on S.M. to be $100,046. ¶¶ 18, 31. Accordingly, Plaintiffs issued invoices to Aetna; however, Aetna only paid Plaintiffs a total of $8,478.25. ¶¶ 21–22.

Plaintiffs allege that the $8,478.25 paid was not equivalent to the 80% reimbursement rate discussed on the March 2020 call and was not a reasonable value for S.M.'s surgery. ¶¶ 25, 46.

### B. Procedural Background

Plaintiffs filed a complaint in the Supreme Court of New York, County of Queens on August 29, 2022.[8] Doc. 1-1. Aetna removed the case to the Eastern District of New York on September 29, 2022. Doc 1. Plaintiffs amended their complaint more than two years later, on November 8, 2024, retaining their claims of state contract law violations and adding alleged violations of state tort law. The allegations in the amended complaint include: (1) breach of contract, (2) unjust enrichment, (3) promissory estoppel, (4) fraudulent inducement, and (5) conversion. Doc. 29. On March 26, 2025, Aetna moved to dismiss the complaint for failure to state a claim pursuant to Rule 12(b)(6). Doc. 34.

---

[8] Plaintiffs' original complaint included a claim under New York Insurance Law § 3224-a, which was removed from their amended complaint. Doc. 1-1 ¶¶ 84-88. The amended complaint also added claims of fraudulent inducement and conversion. Doc. 29 ¶¶ 88–110.

On July 25, 2025, the case was transferred to the Southern District of New York, with the motion to dismiss the complaint for failure to state a claim still pending. Doc. 40.

## II. LEGAL STANDARD

In considering a motion to dismiss pursuant to Rule 12(b)(6), a court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Christie's International*, 699 F.3d at 145. But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The purpose of Rule 12(b)(6) "is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (internal citation omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). To state a plausible claim, the plaintiff must "'raise a reasonable expectation that discovery will reveal evidence' of the wrongdoing alleged, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'" *Citizens United v. Schneiderman*, 882 F.3d 374, 380 (2d Cir. 2018) (quoting *Twombly*, 550 U.S. at 556). If the plaintiff has not "nudged the[] claims across the line from conceivable to plausible, the[] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

When a pleading alleges fraud, Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Particularity "requires that the plaintiff (1) detail the statements (or omissions) that the plaintiff

contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Eternity Global Master Fund Ltd. v. Morgan Guaranty Trust Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004) (internal quotations omitted). Although "[m]alice, intent, knowledge and other condition of mind of a person may be averred generally," Fed R. Civ. P. 9(b), "plaintiffs must allege facts that give rise to a strong inference of fraudulent intent," *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006). Plaintiffs may raise this inference "either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id.* at 290–91.

### III.  DISCUSSION

#### A.  Related Litigation

This case is one of dozens of similar cases filed by these same Plaintiffs in this District and the Eastern District of New York. *See, e.g.*, *Rowe v. Aetna Life Insurance Co.*, No. 23 Civ. 8297 (LGS), 2025 WL 2644190, at *1 (S.D.N.Y. Sept. 15, 2025) (listing similar cases dismissed in the Southern and Eastern Districts of New York); *Rowe Plastic Surgery of N.J., L.L.C. v. Aetna Health & Life Insurance Co.*, No. 23 Civ. 8504 (JLR) (OTW), 2025 WL 1004730, at *1 nn. 1–3 (S.D.N.Y. 2025) (listing additional cases). Approximately sixteen of the cases filed have been dismissed for failure to state a claim. Thus, the ground underlying this motion has been well trodden.

"This case, and the approximately 30 other similar lawsuits, are based on the same theory: phone calls confirmed that the insurance company would pay at least 80% (in some instances 90%) of a reasonable and customary fee, and the conversations [allegedly] created enforceable contracts that were breached." *Rowe Plastic Surgery of New Jersey, LLC v. Aetna Life Insurance Co.*, No. 23 Civ. 3636 (SJB) (LKE), 2025 WL 1907005, at *1 (E.D.N.Y. July 10, 2025). In *Rowe Plastic Surgery of New Jersey, L.L.C. v. Aetna Life Ins. Co.*, No. 23-8083, 2024 WL 4315128 (2d Cir. Sept. 27, 2024)

(hereinafter "*Rowe II*"), the Second Circuit affirmed a decision by Judge Rakoff rejecting that argument in another similar case and granting Aetna's motion to dismiss. *See Rowe Plastic Surgery of New Jersey, LLC v. Aetna Life Insurance Co.*, 705 F. Supp 3d 194 (S.D.N.Y. 2023), *aff'd*, No. 23-8083, 2024 WL 4315128 (2d Cir. Sept. 27, 2024) (hereinafter "*Rowe I*"). Plaintiffs' claims for breach of contract, unjust enrichment, promissory estoppel, and fraudulent inducement must therefore be dismissed for the reasons discussed by the Second Circuit.

First, the amended complaint fails to state a claim for breach of contract and promissory estoppel because Aetna's verification of benefits was not an offer or promise to pay Plaintiffs a particular amount. In *Rowe II*, the Second Circuit held that a call to verify insurance benefits and reimbursement rates "f[e]ll short of the definiteness typically required to create an offer, such as details of the specific service and the price or an explicit undertaking of a duty." *Rowe II* at *3; *see also Rowe I* at 203 ("No reasonable person would understand that representation to be an offer or promise to pay a particular amount to plaintiffs."). Here, the Call Transcript shows that the purpose of the call was to obtain "benefit information for the patient" related to her level of coverage associated with "outpatient surgery done in a hospital, billing as [a] professional provider." Call Transcript at 3–4. As in *Rowe II*, "the lack of definiteness eliminates any uncertainty as to what a reasonable factfinder would conclude about whether this conversation created an actionable offer by Aetna." *Rowe II* at *3. Accordingly, Plaintiffs' breach of contract and promissory estoppel claims must be dismissed.

The amended complaint also fails to state a claim for unjust enrichment because Aetna was not enriched by S.M.'s surgery and any related benefit it did receive was too attenuated and indirect to support the claim. Courts in this Circuit reject the theory that a medical service performed for a patient benefits their insurer. *See Travelers Indemnity Co. of Connecticut v. Losco Group, Inc.*, 150 F. Supp. 2d 556, 563 (S.D.N.Y. 2001) ("It is counterintuitive to say that services provided to an insured are also provided to its insurer.

6

The insurance company derives no benefit from those services; indeed, what the insurer gets is a ripened obligation to pay money to the insured—which hardly can be called a benefit."); *see also Rowe II* at *3 ("It was the patient, not Aetna, who received the benefit of the Providers' direct services.").

Additionally, the benefit received by defendants must be "specific and direct . . . to support an unjust enrichment claim." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000). Plaintiffs allege that Aetna obtained "additional fees for repricing [out-of-network] services on top of its regular monthly fee," and that "the less Aetna paid to [Plaintiffs] the larger the fee Aetna earned." ¶¶ 40, 44. But considering an essentially identical arrangement in *Rowe II*, the Second Circuit concluded "[Plaintiffs] rely solely on allegations of an abstract and attenuated indirect benefit Aetna received. This is insufficient." *Rowe II* at *3. Thus, Plaintiffs' unjust enrichment claim must also be dismissed.

Finally, the amended complaint fails to state a claim for fraudulent inducement because it merely restates Plaintiffs' breach of contract allegations. "A fraud claim will not be sustained on a motion to dismiss where the plaintiff is simply using the claim as a means of restating what is, in substance, a claim for breach of contract." *Rowe II* at *5 (internal citations and quotations omitted). Plaintiffs' breach of contract and fraudulent inducement claims rely on the same alleged circumstances: (1) a phone call between Plaintiffs' employee and Aetna to confirm benefits for Plaintiffs' patient, during which Aetna's representative indicated a particular reimbursement rate for the proposed surgery; (2) Plaintiffs performed the surgery following further discussions with Aetna; and (3) suffered damages when Aetna refused to pay the quoted reimbursement rate. ¶¶ 13–22, 89–94. Because Plaintiffs' fraudulent inducement claim simply restates their breach of contract claim, it is insufficient as a matter of law and must be dismissed. *See Rowe I* at 205; *Rowe II* at *5.

### B. The Conversion Claim

Conversion was the only claim alleged in the amended complaint that was not addressed under substantially identical circumstances in *Rowe I* and *Rowe II*, however here too other courts have previously considered and dismissed this claim in related litigation. *See, e.g., Rowe Plastic Surgery of New Jersey, L.L.C. v. Aetna Life Insurance Co.*, No. 22 Civ. 7900 (JLR) (OTW), 2025 WL 1603919, at *7 (S.D.N.Y. June 6, 2025); *Rowe Plastic Surgery of New Jersey, L.L.C. v. Aetna Life Insurance Co.*, No. 23-cv-8509 (SHS) (OTW), 2025 WL 2242507, at *2 (S.D.N.Y. Aug. 6, 2025). As in those cases, the Court finds that Plaintiffs' conversion claim fails for the same reason their fraudulent inducement claim fails.

"A claim of conversion under New York law 'cannot be predicated on a mere breach of contract.'" *Rynasko v. New York University*, 63 F.4th 186, 196 (2d Cir. 2023) (quoting *Jeffers v. American University of Antigua*, 125 A.D.3d 440, 443 (1st Dep't 2015)). "Rather, a plaintiff must show acts that were unlawful or wrongful as opposed to mere violations of contractual rights." *Coral Capital Solutions LLC v. Disrupt Social, LLC*, No. 24 Civ. 3940 (AS), 2025 WL 1424441, at *7 (S.D.N.Y. May 16, 2025) (quoting *Moses v. Martin*, 360 F. Supp. 2d 533, 541 (S.D.N.Y. 2004)). Here, Plaintiffs allege that they "acquired a property interest in the payment for the services they rendered." ¶ 104. Thus, Aetna is now "intentionally exercising dominion and control over" the remaining $91,567.75[9] that Plaintiffs allege they have the legal right to possess. ¶ 108. But this conversion claim is premised entirely on Plaintiffs' alleged "right to receive its payment from Aetna." ¶ 105. This theory is indistinguishable from Plaintiffs' claim for breach of contract, so their conversion claim must also fail.

### IV. CONCLUSION

For the reasons stated above, Aetna's motion to dismiss Plaintiffs' claims pursuant

---

[9] $100,046.00 that Plaintiffs calculated as Aetna's reimbursement obligation for the procedure performed, less the $8,478.25 that Aetna actually paid.

to Rule 12(b)(6) is GRANTED.  The Clerk of the Court is respectfully directed to terminate the motion, Doc. 34, and close the case.

It is SO ORDERED.

Dated:   November 13, 2025
         New York, New York

_____
EDGARDO RAMOS, U.S.D.J.